UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN WU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 8388 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| SOUTHERN CROSS RESOURCES ) | |
| GROUP, INC., MICHAEL A. NASATIR, ) | |
| ANDREW L. MADENBERG, ) | |
| ROBIN NASATIR, and JEFFREY POZEN, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

After the Securities and Exchange Commission ("SEC") filed a civil complaint against Southern Cross Resources Group, Inc. ("Southern Cross"), Michael A. Nasatir, its chief executive officer ("CEO"), and Andrew L. Madenberg, its president, for securities fraud, Plaintiff Alan Wu filed this lawsuit on December 21, 2019 to recover funds he had invested in and loaned to Southern Cross. In his amended complaint, Wu brings claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, against Southern Cross, Nasatir, Madenberg, and Nasatir's wife, Robin; breach of contract against Southern Cross; and fraud against Nasatir, Madenberg, and Robin.[1] Wu further brings a breach of fiduciary duty claim against Defendant Jeffrey Pozen, Southern Cross' chief financial officer ("CFO"). Pozen has moved to dismiss Wu's claim against him pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Wu filed them outside of the applicable limitations period provided by the CPA Limitations Act or the Illinois Securities Law. Because Wu could have

---

[1] For the sake of simplicity and ease for the reader, the Court will refer to Michael Nasatir by his last name and to his wife, Robin Nasatir, by her first name.

brought his claim against Pozen related to his direct investments in Southern Cross under the Illinois Securities Law, the Illinois Securities Law's three-year statute of limitations bars that portion of Wu's claim. But because the Court cannot conclusively determine that his claim related to his $150,000 loan to Southern Cross warrants application of the limitations period in the Illinois Securities Law or the CPA Limitations Act and does not find it appropriate to relinquish supplemental jurisdiction at this time, Wu may proceed to discovery on his breach of fiduciary duty claim as it relates to that $150,000 loan.

## BACKGROUND[2]

Nasatir and Madenberg entered into an agreement to acquire control of Southern Cross, a company focused on energy-producing assets, in April 2012. Although their control of Southern Cross was subject to payment of certain debts, Nasatir and Madenberg nonetheless represented to investors and lenders, including Wu, that they owned a majority of Southern Cross shares. Nasatir and Madenberg also claimed Southern Cross owned rights to several coal mines in Kentucky, worth $84 million, even though they did not have the rights at one of the coal mines and the permits for the other were expiring. Nasatir further asserted he had invested approximately $310 million of his own assets, including nickel wire valued at $226,200,000. Instead, a business associate owned the nickel wire and had asked Nasatir to sell it on consignment.

Wu became aware of Southern Cross in May 2013. That same summer, Pozen, a former McGladrey auditing firm partner, joined Southern Cross as its new CFO. Learning of this appointment, Wu's confidence in Southern Cross increased. Wu received Southern Cross'

---

[2] The Court takes the facts in the background section from Wu's amended complaint and presumes them to be true for the purpose of resolving Pozen's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

financial statements, which claimed that an accounting firm had audited and a law firm had reviewed them, as well as marketing materials. These documents led Wu to believe that Southern Cross had secured interests in $25 million in coal mine assets and $226 million in nickel wire assets, and that Pozen backed the representations in his role as Southern Cross CFO. In an attempt to solicit additional funds, Nasatir and Madenberg also promised that lenders to Southern Cross could cancel their loans at any time and receive their money back.

Relying on these representations, in June 2013, Wu made his first investment in Southern Cross of $50,000, followed by a $22,500 investment in January 2014 and a $304,947.66 investment in February 2014. On August 7, 2014, Wu also loaned Southern Cross $150,000, memorialized in a loan agreement between the parties. Wu later signed a second loan agreement after Robin claimed she had issues making a copy of the original one. Wu believed the two agreements were the same, but the second loan agreement did not include a money back guarantee like the original did. From September 2014 to April 2015, Southern Cross paid Wu $14,333 towards the loan but then stopped making payments soon after.

On December 7, 2015, Southern Cross issued a letter to dissuade lenders from accelerating their loans, asserting that it was working to generate additional revenue so as to make the required loan payments. Fourteen days later, the SEC filed a civil complaint against Southern Cross, Nasatir, and Madenberg for securities fraud. By that time, Southern Cross had exhausted Wu's $150,000 loan, using that money to pay off third parties. Pozen left Southern Cross in December 2014, but at no time prior to his departure did he advise Wu of how Southern Cross disbursed his funds or of Southern Cross's actual financial condition.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

Wu contends that, as CFO of Southern Cross, Pozen owed him a duty to disclose the true nature of Southern Cross' financial condition but failed to do so. Pozen responds that the statute of limitations bars Wu's claim. Although a complaint need not anticipate an affirmative defense such as the statute of limitations to survive a motion to dismiss, "[a] litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense." *U.S. Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). Pozen contends that the CPA Limitations Act's two-year limitations period, 735 Ill. Comp. Stat. 5/13-214.2, or the Illinois Securities Law's three-year limitations period, 815 Ill. Comp. Stat. 5/13, provides the relevant statute of limitations. According to Pozen, because Wu learned or should have learned of his claim in December 2015 but waited until December 2019 to file suit, either limitations period bars the

4

claim. Wu, on the other hand, contends that a five-year limitations period governs his breach of fiduciary duty claim, making his claim timely regardless of whether it accrued in December 2015 when the SEC filed suit or in December 2018, as he claims in response to the motion to dismiss. *See* 735 Ill. Comp. Stat. 5/13-205; *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1337 (7th Cir. 1992) ("Illinois and federal courts have applied the five-year statute of limitations to breach of fiduciary duty claims"). The Court examines whether either of Pozen's alternative limitations periods clearly applies so as to warrant dismissal at the pleading stage.

**I.    CPA Limitations Act**

Because he is a certified public accountant,[3] Pozen first argues that the CPA Limitations Act bars Wu's claim against him. Under Illinois law:

> Actions based upon tort, contract or otherwise against any person, partnership or corporation registered pursuant to the Illinois Public Accounting Act, as amended [225 Ill. Comp. Stat. 450/0.01*et seq.*], or any of its employees, partners, members, officers or shareholders, for an act or omission in the performance of professional services shall be commenced within 2 years from the time the person bringing an action knew or should reasonably have known of such act or omission.

735 Ill. Comp. Stat. 5/13-214.2(a). As laid out in the Illinois Public Accounting Act, "professional services" include accounting, management, financial or consulting services, compilations, internal audits, preparation of tax returns, furnishing advice on tax matters, bookkeeping, or representations of taxpayers. 225 Ill. Comp. Stat. 450/8.05; *Polsky v. BDO Seidman*, 293 Ill. App. 3d 414, 424 (1997) ("[B]y its plain words, section 13-214.2(a) applies to actions based on tort, contract, or otherwise arising from acts or omissions in the performance of professional services involving accounting"). Courts have recognized that the scope of the CPA

---

[3] Although the amended complaint does not assert that Pozen is a certified public accountant, Wu does not contest this fact in his response.

5

Limitations Act is broad and that "accountants may provide any number of services, some of which may overlap with services provided by other professionals." *Mitchell v. Stonecasters, LLC*, 2018 IL App (2d) 180127, ¶ 27.

Wu's amended complaint focuses on Pozen's role as Southern Cross' CFO, not as an accountant. This does not automatically mean that the CPA Limitations Act does not apply, however. *See id.* ("[A]n accountant does not necessarily stop being an accountant simply because he or she offers services that nonaccountants might also be qualified to provide."). Pozen asserts that Wu's allegations that Pozen failed to disclose to investors Southern Cross' actual financial condition, financial records, assets, valuations, disbursements, and investments implicate managerial, financial, and consulting services within the meaning of the CPA Limitations Act. *See, e.g.*, *id.* ¶ 28 ("[B]usiness valuation activities fall comfortably within the scope of an accountant's 'professional services' for purposes of section 13-214.2(a) of the Code."). The amended complaint only alleges that Pozen knew of the true nature of Southern Cross' finances, not that he himself provided or conducted business valuations to Wu or other investors. Because the amended complaint does not foreclose the possibility that Pozen's activities fall outside the scope of "professional services " for purposes of the CPA Limitations Act, the Court cannot resolve this fact-dependent question at the pleading stage. Therefore, the Court leaves this question to a later day after additional factual development. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record."); *Covington v. Ill. Sec. Serv., Inc.*, 269

F.3d 863, 865 (7th Cir. 2001) (questions presented concerning timeliness of suit were heavily fact-dependent and inappropriate for resolution on a motion to dismiss).

## II. Illinois Securities Law

Alternatively, Pozen argues that the three-year statute of limitations for claims involving securities fraud set forth in the Illinois Securities Law bars Wu's claim because it involves Pozen's alleged failure to disclose material facts related to Wu's investment of funds in Southern Cross and his loan to Southern Cross, which Pozen maintains was actually a promissory note. *See* 815 Ill. Comp. Stat. 5/13(D) ("No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after 3 years from the sale."). The Illinois Securities Law's three-year limitations period applies to any common law claim that relies "upon . . . matters for which relief is granted by the Securities Law." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019) (citation omitted). "If the complaint states a claim cognizable under the Securities Law, then recovery under that statute would be possible." *Klein v. George G. Kerasotes Corp.*, 500 F.3d 669, 671 (7th Cir. 2007). A claim under the Securities Law must relate to the sale of securities. A security is defined as:

> any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, viatical investment, investment fund share, face-amount certificate, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas or other mineral lease, right or royalty, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into, relating to foreign currency, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for,

7

>   guarantee of, or warrant or right to subscribe to or purchase, any of
>   the foregoing.

815 Ill. Comp. Stat. 5/2.1.

Here, Pozen asserts that the breach of fiduciary duty claim concerns alleged securities fraud because Wu's investments in Southern Cross, including the $150,000 loan, fall within the definition of a "security." Wu focuses only on the $150,000 loan agreement, arguing that it does not amount to a promissory note and so the transaction did not involve the sale of securities. Initially, although a February 17, 2020 status report filed in this case described Wu's contract claim as one based on "Southern Cross's default of promissory note it entered into with Plaintiff for $150,000," Doc. 10 at 2, the Court does not find this statement binds Wu as to the character of the $150,000 alleged loan, *see Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them."); *Clausen Miller, P.C. v. Citibank, N.A.*, 738 F. Supp. 2d 850, 854 (N.D. Ill. 2010) ("[A] statement made in a joint status report does not fall into that category of judicial admissions because the purpose of the report is to inform the court of the nature of the case and assist in case management, rather (as in the case of a brief) to decide a contested issue or, as in the case of a Rule 36 request to admit, to establish a fact."). Wu attached the signed loan agreement to his response to the motion to dismiss, and, while not determinative, one cannot find the term "note" anywhere in that document. *See Doherty v. Kahn*, 289 Ill. App. 3d 544, 552 (1997) ("In determining whether an instrument or a transaction is a security under the statute, form is not to be regarded over substance."), *abrogated on other grounds by Byung Moo Soh v. Target Mktg. Sys., Inc.*, 353 Ill. App. 3d 126 (2004)). "The substance of the transaction, the relationship between the parties, and economic reality determine whether a transaction involves a security and whether a purchaser is entitled to protection

afforded by registering or reporting an instrument pursuant to the securities laws." *Id.* The Court cannot make this fact-intensive determination at this time, particularly where the loan agreement before the Court includes traditional hallmarks of a loan. *See* Doc. 46-2 (setting forth the interest payment schedule, the fixed rate of the principal amount and the term of the loan). Although Pozen correctly points out that the agreement offers an option to reinvest interest, Wu selected quarterly distribution of the repayment, as noted on the signature page. Pozen may ultimately establish that the Court should consider the loan agreement a security after further factual development. At the pleading stage, however, at least with respect to Wu's claim as it relates to the $150,000 loan he made to Southern Cross, the Court cannot definitively conclude that the three-year statute of limitations applies. Therefore, using the five year limitations period for breach of fiduciary duty claims, Wu's claim is timely regardless of whether it accrued in December 2015 or December 2018.

But Wu also seeks to recover for Pozen's alleged breach of fiduciary duty as it relates to Wu's direct investments in Southern Cross. *See, e.g.*, Doc. 37 ¶ 104 (alleging that Pozen's actions damage Wu "in the amount of $527,447.66, which is a total of all investments and loans made to Southern Cross"). Wu fails to address Pozen's argument that his investments amounted to securities as defined by the Illinois Securities Law, effectively conceding that the three-year statute of limitations applies to his claim as it relates to those investments. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Further, the allegations in the amended complaint support Pozen's argument. Wu repeatedly alleges in the amended complaint that he was not only a lender to but also a shareholder in Southern Cross, investing $377,447.66 in total, and that Pozen owed him a fiduciary duty because of his status as a shareholder. The amended complaint also alleges that

9

Wu invested in Southern Cross based on false or misleading investment materials and that Pozen failed to disclose Southern Cross' true financial condition. Thus, Wu could have brought his breach of fiduciary duty claim related to his $377,447.66 direct investment in Southern Cross as a securities fraud claim under the Illinois Securities Law, meaning the three-year statute of limitations applies. *See Tregenza v. Lehman Bros.*, 287 Ill. App. 3d 108, 110 (1997) (common law claims, including for breach of fiduciary arising out of a sale of stock, relied "upon matters for which relief is granted" by the Illinois Securities Law and so were subject to the three-year limitations period).

This does not end the inquiry, however. The statute of limitations begins to run when a plaintiff has "notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation" or "actual knowledge of the alleged violation of [the] Act," whichever is earlier. 815 Ill. Comp. Stat. 5/13(D); *Orgone Capital III*, 912 F.3d at 1046. Although he now claims that he only learned of Pozen's actions in December 2018, his amended complaint indicates that he had notice of facts that would have led to actual knowledge of the alleged violation much earlier, in December 2015 when the SEC filed its complaint against Southern Cross, Nasatir, and Madenberg. Although the SEC complaint did not name Pozen, the facts on which he bases his claim were set forth in that complaint and, with the exercise of reasonable diligence, would have led to actual knowledge of Pozen's alleged violations. *See Orgone Capital III*, 912 F.3d at 1049 (congressional hearings and company's disclosures put the plaintiffs on notice of their potential securities fraud claims, triggering the three-year statute of limitations). Therefore, the limitations period began to run in December 2015, meaning that his claim against Pozen for breach of fiduciary duty related to his direct investments came a year too

10

late.  Wu may proceed against Pozen on his breach of fiduciary duty claim only as it relates to the loan agreement.

### III. Supplemental Jurisdiction

Finally, Pozen asks that, if the Court does not find Wu's claims against him barred by the statute of limitations, the Court decline to exercise supplemental jurisdiction over the claim if Southern Cross, Nasatir, Madenberg, and Robin do not actively contest Wu's federal claims.  Although these Defendants have yet to file appearances, the Court finds Pozen's request premature given that Wu has not yet sought the entry of a default judgment against them.  The Court will reevaluate its jurisdiction over the claim against Pozen as the status of Wu's claims against the RICO Defendants becomes clearer.

### CONCLUSION

For the foregoing reasons, the Court grants Pozen's motion to dismiss in part and denies in part [38].  The Court dismisses the breach of fiduciary duty claim as it relates to Wu's $377,447.66 direct investment in Southern Cross with prejudice.

Dated: February 8, 2021

SARA L. ELLIS
United States District Judge

11